**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11   ESTRADA ET AL,                          No. C-14-04465 DMR

12            Plaintiff(s),                  **ORDER DENYING MOTION TO
                                             REMAND [DOCKET NO. 19]; AND
13        v.                                 DENYING MOTION TO DISMISS
                                             [DOCKET NO. 10] AS MOOT**
14   KAISER FOUNDATION HOSPITALS ET AL,

15            Defendant(s).
                                          /
16

17        Before the court is a motion by Plaintiffs to remand this matter to state court.  [Docket No.

18   19.]  The court held a hearing on the motion on December 11, 2014.  For the reasons stated below

19   and at the hearing, the motion is **denied.**

20                              **I.  BACKGROUND**

21        Plaintiffs bring this putative class action against Defendants Kaiser Foundation Hospitals

22   ("KFH"), The Permanente Medical Group ("TPMG"), Kaiser Foundation Health Plan ("KFHP"),

23   and Southern California Permanente Medical Group ("SCPMG").[1]  Plaintiffs are California

24   employees of Defendants.  Compl. at ¶¶ 6-11, 40-42.  The thrust of Plaintiffs' allegations is that

25   Kaiser illegally withheld $.09 per hour from the agreed-upon wages of certain of its employees

26
27
28
        _____
        [1]  Plaintiffs refer to Defendants collectively as "Kaiser."  Compl. [Docket No. 1-1] at ¶ 16.

United States District Court

For the Northern District of California

while intentionally failing to disclose those deductions in employee wage statements and misstating the employees' gross wages.  Compl. at ¶ 1.

## A.  The Coalition

In 1996, twenty-six union locals representing Kaiser employees agreed to engage in coordinated national collective bargaining and for that purpose formed the Coalition of Kaiser Unions (the "Coalition").  Compl. at ¶ 17.  The Coalition currently consists of approximately 29 local unions whose membership includes approximately 100,000 Kaiser employees.  Compl. at ¶ 17.

## B.  The LMP

Several months after the formation of the Coalition, labor leaders and Kaiser executives formed the Kaiser Permanente National Labor Management Partnership ("LMP"), which is governed by the Labor Management Partnership Strategy Group ("Strategy Group"), which in turn appoints trustees to control the Kaiser Permanente Labor Management Partnership Trust ("Partnership Trust").  Compl. at ¶¶ 18-19, 24.  The "Founding Agreement" of the LMP, ratified in October 1997, states that "Kaiser Permanente will bear the costs of administering the Partnership, including consultants, lost time, and incidental expenses of all Kaiser Permanente employees." Compl. at ¶ 19.

## C.  National Collective Bargaining Agreements Between Kaiser and the Coalition

Kaiser and the Coalition have entered into a collective bargaining arrangement embodied in a series of individual agreements, each known as the "National Agreement," with effective dates October 1, 2005; October 1, 2010; and October 1, 2012.  Compl. at ¶ 17.  *See also* Notice of Removal [Docket No. 1] Ex. B (2012 National Agreement); Request for Judicial Notice in Support of Defendants' Motion to Dismiss [Docket No. 11] Ex. A (same).[2]

### 1.  Annual Wage Increases

---

[2] The court takes judicial notice of the the 2012 National Agreement, attached as Exhibit B to the Notice of Removal, since the parties agreed at the hearing that it is a true and correct copy of a document referenced in the Complaint.  *See* Fed. R. Evid. 201(b).

**United States District Court**
For the Northern District of California

1       According to Plaintiffs, "the agreed-upon wage terms of the 2005, 2010, and 2012 National

2   Agreements are stated in Section 2.A.1 of each agreement as [annual] across-the-board wage

3   increases of a specific percentage, commencing on a specific date."  Compl. at ¶ 30.  Section 2.A.1

4   of the 2005 National Agreement provided for 5%, 4%, 4%, 3%, and 3% across-the-board wage

5   increases for Coalition employees in California in years one through five of the agreement.  Section

6   2.A.1. of the 2010 National Agreement provided for 3% across-the-board wage increases for

7   Coalition employees in California in both year one and year two of the agreement. Section 2.A.1. of

8   the 2012 National Agreement provided for 3% across-the-board wage increases for Coalition

9   employees in California each of years one through three of the agreement.  Compl. at ¶¶ 20-22.

10          **2.  $.09 Per Hour Contribution to Partnership Trust**

11          In addition to these wage increases in Sections 2.A.1 of each National Agreement, the

12  following sentence appears in a different section (Section 1.B.3) of each National Agreement: "An

13  amount equal to nine cents per hour per employee will continue to be contributed to the Partnership

14  Trust throughout the term of this Agreement, using the current or jointly acceptable alternative

15  methodologies."  Compl. at ¶ 24.  (In the 2012 Agreement, the phrase "using the current or jointly

16  acceptable alternative methodologies" has been replaced with the phrase "consistently across the

17  Program.").  The same section also states that "[t]he purpose of the employee contribution is

18  employee ownership of the [LMP], sponsorship of increased union capacity and shared ownership of

19  outcomes and performance gains."  2012 National Agreement § 1.B.3.  The section also explains

20  that "[c]hanges in the Employer's overall funding of [LMP] expenses . . . shall be at least

21  proportional to [the] employee contributions . . . ."  *Id.*

22          According to Plaintiffs, "[o]ne of the 'currently or jointly acceptable alternative

23  methodologies' referenced in the sentence from Section 1.B.3 of the National Agreements quoted

24  above in ¶ 24, and the one now applied 'consistently across the Program,' has been to deduct $.09

25  per hour from the agreed-upon wages of the Coalition employees and Class members."  Compl. at ¶

26  26.

27  **D.  Interplay Between National Agreements and Local Collective Bargaining Agreements**

28

3

**United States District Court**
For the Northern District of California

1    The Complaint describes only the National Agreements, and makes a passing reference to

2 other agreements that could bear on the determination of Plaintiffs' wages.  According to Plaintiffs,

3 "Kaiser and the Coalition engaged in collective bargaining to arrive at National Agreements that

4 were binding upon all local Coalition unions and superceded their local collective bargaining

5 agreements."  Compl. at ¶ 49.

6    However, this allegation is contradicted by the terms of the National Agreements that

7 describe the relationship between the National Agreements and local collective bargaining

8 agreements ("CBAs").  For example, the section of the 2012 National Agreement entitled "Scope of

9 Agreement" states:

10    This Agreement is negotiated and entered into by the parties as a result of voluntary national
      bargaining conducted pursuant to the national Labor Management Partnership. ***This***
11    ***Agreement applies only*** to bargaining units represented by local unions that Kaiser
      Permanente and the Coalition mutually agreed would participate in the national common
12    issues bargaining process and who, prior to the effective date, agreed to include this
      Agreement ***as an addendum to their respective local collective bargaining agreements***.

13

14 2012 National Agreement § 3.A (emphasis added).  Section 3.B of the 2012 National Agreement

15 reiterates that the National Agreement applies only as an addendum to local CBAs:

16    The provisions of Local Agreements between the Coalition and Kaiser Permanente establish
      terms and conditions of employment applicable to the recognized or certified bargaining
17    units.  The provisions of this National Agreement ***only apply as an addendum to such Local***
      ***Agreements*** if employees in these bargaining units are represented by a Coalition Union. If a
18    bargaining unit is not represented by a Coalition Union, then the provisions of this National
      Agreement will not apply or establish additional terms and conditions of employment for that
19    bargaining unit beyond those contained in its Local Agreement.

20 2012 National Agreement § 3.B (emphasis added).  The 2012 National Agreement also describes the

21 procedures for resolving conflicts between the National Agreement and a local collective bargaining

22 agreement:

23    If a conflict exists between specific provisions of a local collective bargaining agreement and
      this Agreement, the dispute shall be resolved pursuant to the Partnership Agreement Review
24    Process in Section 1.L.2.

25    If there is a conflict, unless expressly stated otherwise, this Agreement shall supersede the
      local collective bargaining agreements; however, in cases where local collective bargaining
26    agreements contain explicit terms which provide a superior wage, benefit or condition, or
      where it is clear that the parties did not intend to eliminate and/or modify the superior wage,
27    benefit or condition of the local collective bargaining agreement, this Agreement shall not be
      interpreted to deprive the employees of such wage, benefit or condition.

28

4

**United States District Court**
For the Northern District of California

1   2012 National Agreement § 3.B.

2        Thus, Plaintiffs' allegations expose a disagreement between the parties: Plaintiffs contend

3   that the National Agreements comprise the relevant CBA in this case; Kaiser contends that the

4   relevant CBA includes both the National Agreements *and* any local CBA relevant to a putative class

5   member.

6   **D.  Causes of Action**

7        Plaintiffs allege that the employee contributions contemplated by Section 1.B.3 of each

8   National Agreement are illegal payroll deductions from the putative class members' agreed-upon

9   gross wages which were not individually authorized in writing by the members of the putative class.

10  According to Plaintiffs, this amounts to a violation of California Labor Code § 222.  Compl. at ¶¶

11  27, 31, 38, 51, 63 ("Kaiser agreed upon and promised Class members across-the-board wage

12  increases but instead deducted $.09 per hour of the agreed-upon promised amount from Class

13  member[s'] wage rates.").

14       Furthermore, the putative class members' wage statements did not include an itemized

15  disclosure of the deduction of $.09 per hour, and were therefore inaccurate and in violation of

16  California Labor Code § 226.

17       In addition to these two causes of action for violation of California Labor Code § 222 and

18  § 226, Plaintiffs also allege a violation of the California Unfair Competition Law ("UCL"), codified

19  at California Business and Professions Code § 17200, et. seq.  Compl. at ¶¶ 70-75.

20  **E.  Procedural History**

21       Plaintiffs filed this action in California state court on September 5, 2014.  Notice of Removal

22  at 2.  Defendants removed the action to this court on October 6, 2014, asserting that this court has

23  federal question jurisdiction pursuant to 28 U.S.C. § 1331 because some or all of Plaintiffs' causes

24  of action arise under and are completely preempted by Section 301 of the Labor Management

25  Relations Act ("LMRA"), 29 U.S.C. § 185.  *Id.* at 3.

26                          **II.  LEGAL STANDARD**

27       The federal district courts have original jurisdiction over "all civil actions arising under the

28  Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Under 28 U.S.C. § 1441(a),

United States District Court

For the Northern District of California

1  a civil action brought in state court over which the federal district courts have original jurisdiction

2  may be removed to the federal district court for the district embracing the place where the action is

3  pending. *See* 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district

4  court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

5      "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded

6  complaint rule,' which provides that in the absence of diversity jurisdiction, federal jurisdiction

7  exists only when a federal question is presented on the face of the plaintiff's properly pleaded

8  complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar, Inc. v.*

9  *Williams*, 482 U.S. 386, 392 (1987)). That rule applies equally to evaluating the existence of federal

10 questions in cases brought initially in federal court and in removed cases. *See Holmes Group, Inc. v.*

11 *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 n.2 (2002). Relevant for purposes here, a

12 federal question exists only when it is presented by what is or should have been alleged in the

13 complaint. *Id*. at 830. The implication of a federal question through issues raised by an answer or

14 counterclaim does not suffice to establish federal question jurisdiction. *Id*. at 831. Under the "well-

15 pleaded complaint rule," the plaintiff is the master of his or her claim, and "may avoid federal

16 jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. However, a plaintiff

17 "may not defeat removal by omitting to plead necessary federal questions in a complaint." *JustMed,*

18 *Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (quotation marks and citations omitted). The

19 removing defendant bears the burden of establishing that removal was proper. *Duncan v. Stuetzle*,

20 76 F.3d 1480, 1485 (9th Cir. 1996).

21                              **III.  DISCUSSION**

22      Plaintiffs move to remand the case back to California state court. Plaintiffs contend that

23 none of their claims are substantially dependent on the terms of the CBA, and as such they are not

24 preempted by Section 301 of the LMRA.

25 **A.  Preemption Under Section 301 of the LMRA**

26      "In areas where federal law completely preempts state law, . . .  a claim purportedly based on

27 state law is considered to be a federal claim from its inception; thus, such claims are considered to

28 have arisen under federal law" for purposes of the court's subject matter jurisdiction over the claims.

6

**United States District Court**

For the Northern District of California

1   *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993) (citing *Caterpillar, Inc. v.*

2   *Williams*, 482 U.S. 386, 392 (1987)).  Section 301(a) of the Labor Act provides federal jurisdiction

3   over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. §

4   185(a).  Section 301 of LMRA "completely preempts any state causes of action based on alleged

5   violations of contracts between employers and labor organizations." *Ramirez*, 998 F.2d at 747.  The

6   "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for

7   violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr.*

8   *Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

9          "This is true even in some instances in which the plaintiffs have not alleged a breach of

10  contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of the labor

11  contract or requires interpretation of it." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th

12  Cir. 2007).  Thus, a state law claim is preempted by Section 301 "if the resolution of [that] claim

13  depends upon the meaning of a collective-bargaining agreement." *Detabali v. St. Luke's Hosp.*, 482

14  F.3d 1199, 1203 (9th Cir. 2007) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399,

15  405-06 (1988)).  "The plaintiff's claim is the touchstone for this analysis; the need to interpret the

16  [collective bargaining agreement] must inhere in the nature of the plaintiff's claim. If the claim is

17  plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to

18  the [collective bargaining agreement] in mounting a defense." *Cramer v. Consol. Freightways, Inc.*,

19  255 F.3d 683, 691 (9th Cir. 2001).

20         To determine whether a claim is preempted by Section 301, courts apply a two-part analysis.

21  First, the court inquires "whether the asserted cause of action involves a right conferred upon an

22  employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then

23  the claim is preempted, and our analysis ends there." *Burnside*, 491 F.3d at 1059 (quoting *Allis-*

24  *Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985)).

25         Second, if the right exists independently of the CBA, the court must consider whether "it is

26  nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 1059

27  (quotations omitted).  If the claim can be resolved by "looking to" versus "interpreting" the CBA,

28  the claim is not preempted.  *Id.* at 1060.  "Although the 'look to'/'interpret' distinction is not always

United States District Court

For the Northern District of California

1  clear or amenable to a bright-line test, some assessments are easier to make than others.  For

2  example, we know that neither looking to the CBA merely to discern that none of its terms is

3  reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing a

4  penalty is enough to warrant preemption." *Id.* (formatting and quotations omitted).  Similarly,

5  "alleging a hypothetical connection between the claim and the terms of the CBA is not enough to

6  preempt the claim." *Id.* (citation omitted).

7       Here, Kaiser does not dispute that the rights asserted by Plaintiffs under the California

8  Labor Code and the UCL are rights conferred upon an employee by virtue of state law.  Thus, the

9  court focuses on the second part of the preemption analysis, i.e., whether Plaintiffs' claims are

10  "substantially dependent on analysis of a collective-bargaining agreement."

11  **B.  Cal. Labor Code § 222 Claim**

12       Section 222 of the California Labor Code provides: "It shall be unlawful, in case of any wage

13  agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to

14  defraud an employee, a competitor, or any other person, to withhold from said employee any part of

15  *the wage agreed upon*."  Cal. Lab. Code § 222 (emphasis added).  Plaintiffs' Section 222 claim is

16  that Section 1.B.3 of the National Agreements, which describe the $.09 per hour per employee

17  contributions to the Partnership Trust, constitute unlawful withholding of the wage agreed upon.

18       The Section 222 claim necessarily requires the court to determine "the wage agreed upon."

19  That determination, in turn, depends on the terms of the collective bargaining agreements applicable

20  to the parties, and requires that those terms be construed.  Specifically, Plaintiffs' position is that the

21  wage agreed upon can be found solely in Section 2.A.1 of the National Agreements, in the section

22  that describes the annual across-the-board wage increases.  *See* Compl. at ¶ 30. Kaiser disagrees, and

23  contends that Section 2.A.1 is only one of the relevant provisions used to determine what constitutes

24  "the  wage agreed upon"; other relevant provisions include the wage rates published in the local

25  CBAs referenced in the National Agreements.  *See* Opp. [Docket No. 21] at 8.  According to Kaiser,

26  the $.09 contribution was factored into the agreed-upon wage, and therefore should not be construed

27  as a separate deduction from agreed-upon wages.

28

8

**United States District Court**
For the Northern District of California

1    Numerous other courts have considered claims under Section 222 with circumstances similar

2   to those here, and found those claims to be preempted by Section 301 of the LMRA because they

3   required the court to interpret CBAs to determine "the wage agreed upon."  For example, in *Mendes*,

4   the plaintiff, a former employee of the defendant, contended that the defendant had paid him at a rate

5   less than the wage agreed upon in the operative CBA.  *Mendes v. W.M. Lyles Co.,* 07-cv-1265AWI

6   GSA, 2008 WL 171003, at *1 (E.D. Cal. Jan. 18, 2008).  The court stated as follows:

7   > Mendes's contention is that he was not paid the amount mandated by the operative [CBA]
> and the damages claimed is the difference between the amount that was agreed upon in the
8   > [CBA] and the lesser amount that he was actually paid. This claim is about a violation of a
> collective bargaining agreement. Mendes relies on Labor Code §§ 222 and 227, but those
9   > sections are wholly dependant upon what an employer and employee/union 'agreed upon'
> and prohibit withholding or not paying the amount that was 'agreed upon.'  Indeed, these
10  > sections specifically codify and make 'unlawful' a particular type of breach of a collective
> bargaining agreement: one involving the payments of wages and benefits.  Without a breach
11  > of the wage/benefit funds provisions of a collective bargaining agreement, there can be no
> violation of Labor Code §§ 222 or 227.
12
> The inquiry into this cause of action, under Labor Code §§ 222 and 227, would 'begin and
13  > end' with the collective bargaining agreements.  Mendes would be required to show what
> was 'agreed upon,' that he fits within the parameters of what was 'agreed upon,' and that
14  > Lyles did not pay him the amount that was 'agreed upon.' In other words, Mendes must show
> that the provisions of the collective bargaining agreements were breached/violated.  Where a
15  > state law in essence creates a claim for breach of the collective bargaining agreement the law
> falls squarely within the scope of LMRA § 301 complete preemption.  Given the allegations
16  > and damages claimed, this cause of action arises from a violation of, and depends on, a
> collective bargaining agreement and requires that a collective bargaining agreement be
17  > construed.

18  *Id.* at *8 (citations omitted). *See also Cornn v. United Parcel Serv., Inc.*, No. C03-2001 TEH, 2004

19  WL 2271585, at *1 (N.D. Cal. Oct. 5, 2004) ("The Court cannot determine whether UPS complied

20  with its statutory obligations to pay Plaintiffs' wages without interpreting the CBAs to determine

21  what was actually agreed upon.  Plaintiffs claim a nonnegotiable right, independent of the CBAs, to

22  be paid for all work performed, but the code sections they rely on to establish that right only require

23  an employer to pay an employee all wages as agreed upon.  *See, e.g.*, Cal. Labor Code § 222

24  (making it unlawful to withhold from an employee 'any part of the wage *agreed upon*' (emphasis

25  added)) . . . . The level of interpretation required to resolve Plaintiffs' first claim goes beyond the

26  need to refer to the CBA to determine the appropriate wage rate or damages."); *Bernardi v.*

27  *Amtech/San Francisco Elevator Co.*, No. C 08-01922 WHA, 2008 WL 2345153, at *4 (N.D. Cal.

28  June 5, 2008) ("The complaint alleges that plaintiffs were not paid the full amount of vacation pay to

9

**United States District Court**
For the Northern District of California

1   which they were entitled under [the CBA] and Section 222 of the California Labor Code.  This

2   requires interpretation of the CBA.  Plaintiffs argue that their claim only requires the district court to

3   look at the agreement rather than to interpret it.  They say that an employee's wages are guaranteed

4   under Section 222 and were merely referred to in the CBA.  Plaintiffs' argument is unpersuasive.

5   The parties dispute the meaning of the CBA . . . . In essence, both parties dispute the amount due

6   and owing under the CBA, which requires more than a mere look at the CBA.").

7          Plaintiffs' response to the preemption analyses in *Cornn*, *Bernardi*, and *Mendes* is to explain

8   that their Section 222 claim is dissimilar to the Section 222 claims in those cases.  Plaintiffs contend

9   "they invoke an application of Section 222 that has been rare in recent years despite being firmly

10  rooted in the purpose and tradition of the statute."  Motion at 10.  According to Plaintiffs, Section

11  222 may be invoked against "secret deductions and other practices that make it appear that an

12  employer pays one amounts, when in fact it pays another."  *Id.*

13         Plaintiffs rely heavily on a problematic case for this application of Section 222.  In *Int'l*

14  *Woodworkers of Am. v. McCloud Lumber, Co.*, 119 F. Supp. 475 (N.D. Cal. 1953), representatives

15  from the plaintiff union and the defendant employer made a joint recommendation that employees

16  represented by the union should receive a wage increase of $.075 per hour, and also that the

17  employer should deduct $.075 from the earnings of each employee to pay premiums for a health and

18  welfare program.  *Id.* at 480.  The union and employer then signed a memorandum of agreement

19  providing that the employer could deduct $.075 per hour from the wages of each employee for

20  payment of the premiums if the employee signed a written authorization for the employer to

21  withhold that amount.  *Id.* at 481-82.  The parties sued under Section 301 of the LMRA for

22  declaratory judgment regarding whether the employer could withhold the wage increase from

23  employees who declined to sign the written authorization.  *Id.* at 477.  The court held that the terms

24  of the agreement between the union and employer permitted the employer to withhold wages only

25  from those employees who had explicitly authorized it.  *Id.* at 488.  Neither party brought a claim

26  under Section 222, but the court noted that Section 222 and Section 224 of the California Labor

27  Code expressed the public policy preference that employees give individual written authorization for

28  wage deductions like those contemplated in the memorandum of agreement.  *Id.* at 486.

**United States District Court**
For the Northern District of California

1      The problems with Plaintiffs' reliance on *McCloud* are manifold.  The *McCloud* court was

2  not called upon to analyze the preemptive effect of Section 301 because the claims in *McCloud* were

3  actually brought under Section 301, not under California state law; the court's reference to Section

4  222 is only incidental.  In fact, even if the case had been brought under California law, the *McCloud*

5  could not have analyzed Section 301's preemptive effect because, like almost all of the cases

6  Plaintiffs cite to support its reading of Section 222, *McCloud* is more than fifty years old and

7  predates the development of federal common law regarding the preemptive effect of Section 301.

8  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) ("In  *Textile Workers v. Lincoln Mills*,

9  353 U.S. 448 (1957), the Court ruled that § 301 expresses a federal policy that the substantive law to

10  apply in § 301 cases 'is federal law, which the courts must fashion from the policy of our national

11  labor laws.' *Id.* at 456.  That seminal case understood § 301 as a congressional mandate to the

12  federal courts to fashion a body of federal common law to be used to address disputes arising out of

13  labor contracts.  The pre-emptive effect of § 301 was first analyzed in *Teamsters v. Lucas Flour Co.*,

14  369 U.S. 95, 103 [] (1962).").[3]

15      The more fundamental problem with Plaintiffs' argument is that even accepting their theory

16  for violation of Section 222—that deductions from wages in a collective bargaining agreement

17  violate Section 222 unless the employee explicitly authorizes the deduction—this theory still

18  requires the court to interpret the agreements between the parties to determine the wages agreed

19  upon, since it must determine whether the $.09 per hour contribution contemplated by Section 1.B.3

20  of the National Agreements should be construed as a deduction from agreed upon wages or as a

21  factor in the determination of the agreed upon wage rate.  In *McCloud*, the $.075 deduction was

22  explicitly described in the agreement as a "deduction" from the earned wages of each employee.

23  119 F. Supp. at 481-82.  That is not the case here, where the National Agreements describe an

---

[3]  In support of Plaintiffs' theory for violation of Section 222, Plaintiffs cite to four cases, three of which predate federal common law on the preemptive effect of Section 301. *See Sublett v. Henry's Turk & Taylor Lunch*, 21 Cal. 2d 273 (1942), *Shalz v. Union Sch. Dist.*, 58 Cal. App. 2d 599, 601 (1943); and *Kerr's Catering Serv. v. Dep't of Indus. Relations*, 57 Cal. 2d 319 (1962).  The fourth case is *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152 (2012), which does not involve the scenario for which Plaintiffs cite it (where the collective bargaining agreement includes a simultaneous wage increase and deduction) but rather a clearly different scenario, in which the employer claimed the commission paid to an employee was improperly calculated and so deducted the claimed overpayment from the employee's 401k retirement account and subsequent paychecks.  In any event, the *Sciborski* plaintiff alleged a violation of California Labor Code § 221, which "generally prohibits an employer from deducting earned amounts from an employee's wages," rather than Section 222. *Id.* at 814.

11

**United States District Court**

For the Northern District of California

1  employee's "contribution" to the Partnership Trust.  To determine whether this "contribution" was a

2  deduction from earned wages or merely a factor in the calculation of the agreed-upon wage, the

3  court may be required to consider, *inter alia*, (1) the interaction between the National Agreements

4  and local collective bargaining agreements, because Plaintiffs contend that the National Agreements

5  "superceded [all] local collective bargaining agreements," Compl. at ¶ 49, whereas the 2012

6  National Agreement states that it is to be read as an addendum to the local collective bargaining

7  agreements, which Kaiser contends contain detailed wage tables that constitute the actual agreed-

8  upon wages; (2) the other terms of the National Agreement and local collective bargaining

9  agreements to determine whether other provisions bear on the determination of the agreed-upon

10  wages, since Plaintiffs' complaint specifies only two provisions of a 120-page agreement; and

11  possibly (3) the intentions, expectations, and expressions of the bargaining parties during the period

12  of negotiation, e.g., regarding whether the $.09 contribution was incorporated into the agreed-upon

13  wages.

14      At the hearing, Plaintiffs raised a new argument not previously developed in their motion:

15  namely, that this case is analogous to *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1081 (9th Cir. 2005)

16  and *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000), two cases which

17  the Ninth Circuit found Section 301 preemption inapplicable and remanded to state court.  However,

18  *Valles* and *Balcorta* are plainly distinguishable from the circumstances here.  Both cases involved

19  collective bargaining agreements that purported to waive the nonnegotiable rights guaranteed by the

20  California Labor Code (i.e., the right to payment of wages within 24 hours of discharge; the right to

21  meal periods) under which the plaintiffs brought suit.[4]  Here, Plaintiffs' somewhat inscrutable

22

23  _____

    [4]  In *Balcorta,* the plaintiff alleged that he had not been paid within 24 hours of his discharge,
    in violation of a California statute requiring workers to be paid within 24 hours of discharge.  The
24  defendant argued that the collective bargaining agreement contained terms governing the timely
    payment of wages after discharge, such that the plaintiff's claim was preempted by Section 301.  The
25  court held that "[the defendant] cannot claim § 301 complete preemption on the ground that the parties
    agreed in the collective bargaining agreement to waive the statutory rights conferred by" the California
26  Labor Code.  208 F.3d at 1112.  Section 301 "does not permit parties to waive, in a collective bargaining
    agreement, nonnegotiable state rights.  Were we to extend the § 301 complete preemption doctrine to
27  allow for preemption by virtue of such a waiver, parties would be able to immunize themselves from
    suit under state-laws of general applicability by simply including their unlawful behavior in a labor
28  contract."  *Id.* (citations omitted).
        Similarly, in *Valles*, employees who were required to work through their lunch periods brought
    claims for violation of the California Labor Code provision providing a right to a meal break, which the
    employer argued were preempted by Section 301 because the collective bargaining agreement
    purportedly waived those rights.  The Ninth Circuit found that those claims were not preempted because

United States District Court

For the Northern District of California

1   argument appears to be that Section 301 preemption does not apply because the National

2   Agreements cannot purport to waive the right to be paid agreed-upon wages guaranteed by Section

3   222.  The problem with this argument is that Kaiser does not contend that the National Agreement

4   purports to waive an employee's right to be paid the agreed-upon wages.  Instead, the heart of this

5   dispute is what constitutes the agreed-upon wages, a determination that will require the court to

6   construe the relevant CBAs as described above.  Plaintiffs' attempt to cloak this question of contract

7   interpretation in the guise of a *Balcorta*/*Valles* waiver issue does not change its nature.

8        Because Plaintiffs' Section 222 claim requires the court to construe and interpret the

9   collective bargaining agreements between the parties, the claim is "substantially dependent on

10  analysis of a collective-bargaining agreement" and is therefore preempted by Section 301 of the

11  LMRA.[5]

12  **C.  Cal. Labor Code § 226 Claim**

13       Plaintiffs contend that the putative class members' wage statements did not include an

14  itemized disclosure of the deduction of $.09 per hour, and were therefore inaccurate and in violation

15

16

17

18  _____

19  it did not need to construe the collective bargaining agreement in order to resolve them. *Id.* at 1081-82 ("We need not, indeed may not, construe the Ivy Hill collective bargaining agreement in order to consider whether a waiver exists because any provision of the collective bargaining agreement

20  purporting to waive the right to meal periods would be of no force or effect: The right in question is plainly nonnegotiable.  Aside from asserting generally that the state law right itself has been waived

21  through the collective bargaining agreement, Ivy Hill points to no disputed contractual provisions that we need to interpret or construe in order to resolve the employees' claim. Thus, the construction of the

22  collective bargaining agreement is simply not involved.").

23       [5]  At the hearing as well as in their briefing, Plaintiffs simply listed cases that they believed to be analogous to this one.  Each of these is plainly distinguishable on the facts. *See Burnside*, 491 F.3d

24  at 1053 (finding that duct workers' claim that they were not compensated for travel time to and from work site required court to "look to" but not "interpret" CBA to determine whether employees waived

25  right to be compensated for travel time; remanding to state court); *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199 (9th Cir. 2007) (remanding to state court because plaintiff's race and ethnicity discrimination

26  claims required the court to look to but not interpret undisputed provisions of CBA governing work assignments); *Rodriguez v. Pac. Steel Casting Co.*, No. 12-CV-00353 NC, 2012 WL 2000793 (N.D. Cal.

27  June 1, 2012 (remanding plaintiffs' claim that defendant did not provide required meal and rest breaks because court cannot construe a CBA that purports to waive nonnegotiable meal break requirements);

28  *Quillian v. Lion Oil Co.*, 96 Cal. App. 3d 156 (1979) (state law case not involving CBA, where preemption issue was not raised, and where state law prohibited specific type of deduction from employee wages that is not the type of deduction at issue in this case); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743 (9th Cir. 1993) (remanding national origin discrimination claim to state court because its determination did not require interpretation of CBA).

**United States District Court**
For the Northern District of California

1    of Section 226 of the California Labor Code.[6]  However, Plaintiffs' theory for why Kaiser's wage

2    statements were inaccurate depends on the same allegations upon which their Section 222 rely;

3    namely, that the $.09 per hour contribution contemplated by Section 1.B.3 of the National

4    Agreements should be construed as a deduction from agreed upon wages.  For the reasons explained

5    above, in order to test these allegations, the court will be required to interpret the relevant collective

6    bargaining agreements and determine what constitutes the agreed upon wages.  As such, Plaintiffs'

7    Section 226 is substantially dependent upon analysis of a collective bargaining agreement and is

8    preempted by Section 301 of the LMRA.

9    **D.  UCL Claim**

10        Plaintiffs' motion offers no argument regarding whether the court should remand their cause

11   of action under the UCL.  Defendants note this, and suggest that the court construe Plaintiffs' silence

12   as either a concession that the court has jurisdiction over this claim or an acknowledgment that the

13   claim is completely derivative of their Section 222 and 226 claims and is therefore also preempted

14   by Section 301.  Plaintiffs' UCL claim is in fact entirely derivative of their California Labor Code

15   claims, as the Complaint offers no other theory for why Kaiser's behavior is unlawful or unfair other

16   than because it violates Sections 222 and 226.  *See* Compl. at ¶¶ 70-75 ("By the conduct alleged

17   herein, and more specifically in ¶¶ 43-69 above [i.e., the Sections 222 and 226 allegations], Kaiser

18   has engaged and continues to engage in a business practice which violates California law, including

19   California Labor Code §§ 222 and 226 . . . .").  As such, the UCL claim is also preempted.

20                              **IV.  CONCLUSION**

21        For the reasons stated above, the court determines that Plaintiffs' claims are preempted by

22   Section 301 of the LMRA.  Plaintiffs' motion to remand is **denied.**

23        Because the court finds that all of Plaintiffs' claims are preempted by Section 301, the claims

24   as alleged cannot survive.  Federal Rule of Civil Procedure 15(a) establishes that leave to amend

25   "shall be freely given when justice so requires."  Therefore Plaintiffs are granted leave to file an

26   amended complaint to reallege their claims as Section 301 claims.  Any amended complaint must be

27   filed by **January 15, 2015**.  Failure to file an amended complaint by that date will result in dismissal

28

---

   [6]  California Labor Code § 226(a) requires an employer to furnish an employee with periodic
itemized wage payment statements that accurately show certain information, including gross wages and
deductions therefrom.

                                    14

1    of this action on the merits. *See Ramirez*, 998 F.2d at 746 (final decision, for purposes of appellate

2    jurisdiction, "is most often most often characterized as one that ends the litigation on the merits and

3    leaves nothing for the court to do but execute the judgment").

4          Kaiser's pending motion to dismiss, held in abeyance during the determination of this

5    motion, is **denied as moot**.

8          IT IS SO ORDERED.

10   Dated:  December 29, 2014



DONNA M. RYU
United States Magistrate Judge

United States District Court
For the Northern District of California